B25B (Official Form 25B) (12/08)

# United States Bankruptcy Court
## Southern District of Ohio

In re **Butterfliez Services, LLC**  
Debtor(s)

Case No. **2:15-bk-50914**  
Chapter **11**

Small Business Case under Chapter 11

# BUTTERFLIEZ SERVICES, LLC'S *SECOND AMENDED*

# CHAPTER 11 DISCLOSURE STATEMENT

*Table of Contents*

| | | |
|---|---|---|
| I. | INTRODUCTION | 2 |
| | A. Purpose of This Document And Sources of Information Used To Prepare It | 2 |
| | B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing | 2,3 |
| | C. Disclaimers | 3 |
| II. | BACKGROUND | 3 |
| | A. Description and History of the Debtor's Business | 3 |
| | B. Insiders of the Debtor | 4 |
| | C. Management of the Debtor Before and During the Bankruptcy | 4 |
| | D. Events Leading to Chapter 11 Filing | 4 |
| | E. Significant Events During the Bankruptcy Case | 5 |
| | F. Projected Recovery of Avoidable Transfers | 5 |
| | G. Claims Objections | 5 |
| | H. Current and Historical Financial Conditions | 5 |
| III. | SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS | 5 |
| | A. What is the Purpose of the Plan of Reorganization? | 5,6 |
| | B. Unclassified Claims | 6 |
| |     1. Administrative Expenses | 6 |
| | C. Classes of Claims and Equity Interests | 6 |
| |     1. CLASS 1 - Priority Tax Claims - And OPT OUT Procedure | 6,7 |
| |     2. CLASS 2 - Secured Claim (Internal Revenue Service) | 7,8 |
| |     3. CLASS 3 - General Unsecured Claims | 8 |
| |     4. CLASS 4 - Equity Security Holder(s) | 8 |
| | D. Means of Implementing the Plan | 8 |
| | E. Risk Factors | 9 |
| | F. Executory Contracts and Unexpired Leases | 9 |
| | G. Tax Consequences of Plan | 9 |
| IV. | CONFIRMATION REQUIREMENTS AND PROCEDURES | 9 |
| | A. Who May Vote, Object or Opt Out | 9,10 |
| | B. Votes Necessary to Confirm the Plan | 10,11 |
| | C. Liquidation Analysis | 11 |
| | D. Feasibility | 11,12 |
| V. | EFFECT OF CONFIRMATION OF PLAN | 12 |
| | A. Discharge of Debtor | 12 |
| | B. Modification of Plan | 12 |
| | C. Final Decree | 13 |
| VI. | OTHER PLAN PROVISIONS | 13 |
| | EXHIBITS | 14 |

## I.   INTRODUCTION

This is the SECOND AMENDED  disclosure statement (the "Disclosure Statement") in the small business Chapter 11 case of BUTTERFLIEZ SERVICES, LLC (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the FIRST AMENDED CHAPTER 11 PLAN  (the "Plan") filed by BUTTERFLIEZ SERVICES, LLC on December 9, 2015.   A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  *Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages **5**-**8** of this Disclosure Statement. General unsecured creditors are classified in Class 3 and will receive a distribution of **5%** of their allowed claims, to be distributed as follows:  The Debtor will pay $1,000.00 per year to Class 3 on a *Pro Rata* basis beginning with the first year following the year of the Effective Date of the Plan.  The payments will made on or before the 20th day of June of each year.

### A.   Purpose of This Document And Sources Of Information Used To Prepare It

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtor believes the  Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

Except where otherwise noted, the sources of the information used to prepare this Disclosure Statement were provided by the Debtor's sole member, RAMONA L. HAWKINS, and the books, records, internal banking and financial information provided by the Debtor.

### B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.  Also see, **Order (ECF. Doc. ___)** for additional important information (copy served herewith).

1. *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on _____ at _____, before Judge C. Kathryn Preston in **Courtroom __** at the U.S. Bankruptcy Court, 175 N. High St., 5th Floor, Columbus, Ohio 43215.

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Nobile & Thompson Co., L.P.A., 4876 Cemetery Rd., Hilliard, Ohio 43026.  See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.  A ballot form has been provided as **Exhibit B**.

        3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtor and its counsel by _____.

        4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact James E. Nobile or Matthew J. Thompson at Nobile & Thompson Co., L.P.A., 4876 Cemetery Rd., Hilliard, Ohio 43026 or by email at jenobile@ntlegal.com or mjthompson@ntlegal.com.

    **C.**      **Disclaimers**

*The statements contained in this Disclosure Statement are made as of the date of its filing, unless another time is specified herein, and neither the delivery of this Disclosure Statement nor any exchange of rights made in connection with this Disclosure Statement shall, under any circumstances, create any implication that there has not been a change in the facts set forth herein since the date of this Disclosure Statement and the materials relied upon in preparation of this Disclosure Statement were complied. This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan, and nothing contained in it shall constitute, or be deemed conclusive, advice on the tax or other legal effects of an reorganization on holders of claims or interests in connection with such reorganization.*

*No reliance should be placed upon prior correspondence or discussions with the Debtor or its counsel regarding this Disclosure Statement or the Plan. Creditors or interest holders should rely only upon the information contained herein. Except as set forth in this Disclosure Statement and its Exhibits, no representations concerning the Debtor, its assets, its past or future affairs, or the Plan are authorized, nor are any representations to be relied upon in arriving at a decision with respect to the Plan. Any representations made to secure acceptance or rejection of the Plan other than as contained in this Disclosure Statement should be reported to the Debtor's counsel. There has been no independent audit of the financial information contained in the Disclosure Statement. Although the Debtor believes all information herein is accurate, the Debtor is no able to warrant or represent that the information contained herein is without any inaccuracy. Nobile & Thompson Co., L.P.A., counsel to the Debtor is likewise unable to warrant or represent that the information contained in this Disclosure Statement is without inaccuracy, although great effort has been made to be accurate. Counsel has not verified the information contained in this Disclosure Statement, although it has no actual knowledge of any inaccuracies.*

*The Court has conditionally approved this Disclosure Statement pursuant to Fed. R. Bankr. P. 3017.1, as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has conditionally approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's conditional approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan as set forth above at I.B.1.*

    **II.**      **BACKGROUND**

    **A.**      **Description and History of the Debtor's Business**

The Debtor is an Ohio limited liability company. Ramona L. Hawkins is the company's sole member. Ms. Hawkins formed the company in April 2009 to obtain certification under Ohio law [R.C. 5123.18] to provide residential services to individuals with developmental disabilities. Ms. Hawkins was formerly employed by a different company who provided such services various individuals including two adult males with developmental disabilities with whom Ms. Hawkins would eventually form a long standing relationship. When the company she was working for determined to ceased operations, Ms. Hawkins worried that these two individuals would be put back into the system and be placed with a third party with whom they would be uncomfortable. Ms. Hawkins created Butterfliez Services, LLC to continue providing the services them. The Debtor has been in business ever since and its sole clients are the referenced two individuals.

### B. Insiders of the Debtor

The only "insider" of the Debtor within the meaning of 11 U.S.C. 101(31) is Ramona L. Hawkins, who is the Debtor's sole and managing member. Ms. Hawkins works daily to manage the Debtor's business affairs and to manage the care of the two individuals described in paragraph A above. Ms. Hawkins receives compensation for services. Since March 1, 2015 Ms. Hawkins has been paid $32,212.22 through October 2015 from the Debtor's gross revenues. This equates to $4,027.00 in monthly gross earnings for Ms. Hawkins.

### C. Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officer, director, manager or other person in control of the Debtor were:   Ramona L. Hawkins.

The Manager of the Debtor during the Debtor's Chapter 11 case have been:  Ramona L.  Hawkins.

After the effective date of the order confirming the Plan, the director, officer, and voting trustees of the Debtor, awill be: Ramona L. Hawkins.  Ms. Hawkins will maintain her present status and income after confirmation of the Debtor's Chapter 11 Plan.

### D. Events Leading to Chapter 11 Filing

In October 2010, the Debtor's two sources of revenue, the Franklin County Board of Developmental Disabilities ("FCBDD") and the Ohio Department of Developmental Disabilities ("ODODD") changed numerous procedures regarding billing protocols, and billing codes. The Debtor, as a direct result of the new billing procedures, effectively lost 50% of its annual revenue. Further, as a result of newly changed bill-coding system, significant delays, exceeding 3 months, occurred from the time the FCBDD and ODODD implemented the changes to when the Debtor could submit its monthly billings for payment. During this down-time, the Debtor was compelled to use funds reserved for tax payments to operate the business.

Compounding the problem was the fact that in early 2011, Ms. Hawkins began receiving collection notices from certain governmental entities (e.g. the IRS, OTAX etc...) concerning certain unfiled returns and unpaid taxes. Ms. Hawkins had relied upon the services of a tax professional to assist with the Debtor with the organization of its tax filing requirements, payment of periodic tax payments, and the preparation of tax returns for the Local, State and Federal governments. Ms. Hawkins learned that this tax professional misrepresented her abilities and was not properly withholding for employees and was not timely or properly filing the required tax forms. Ms. Hawkins attempted to contact the tax professional but her calls went unreturned. The tax professional has since disappeared.

Ms. Hawkins was successful in negotiating with the various governmental units to make installment payments on the past due taxes. Ms. Hawkins also hired competent tax professionals to remedy any document filing defects. However, in early January 2014, the ODODD informed Ms. Hawkins that there was a procedural error in the manner in which the Debtor was submitting its billing records that had existed since October 2010, the date the FCBDD and ODODD changed its billing procedures. The ODODD required the Debtor to resubmit all of its billing statements for that period of time. The resubmission of the records resulted in another multiple month delay for the Debtor to receive its revenues from the billings it submitted.

For over 8 months, Ms. Hawkins and her husband used their personal resources to allow the Debtor to continue operations. However, by September 2014, the Debtor had defaulted on the installment payment agreements Ms. Hawkins previously negotiated. In October 2014, Ms. Hawkins completed a meeting with the IRS to discuss a new payment agreement, but the IRS (the Debtor's largest single creditor) declined.

By the end of the year 2014 through January 2015, the IRS began procedures to levy against the Debtor's income receipts from billings to ODODD. The IRS levy left the Debtor with zero revenue on which to operate. The Debtor and her spouse could no longer afford to subsidize the Debtor's operations. Thus, on February 20, 2015, Ms. Hawkins made the difficult decision to file Chapter 11.

### E. Significant Events During the Bankruptcy Case

Since the filing date of this Chapter 11, the Debtor has been successfully operating its business. The Debtor is current on all tax and tax filing obligations.

Over the first eight (8) months of operation, the Debtor has earned gross revenues of $124,974.89, which equates to a gross monthly average income of $15,621.86. The Debtor's business expenses, inclusive of Ms. Hawkin's income (see, *supra* II B.) have totaled $108,631.79 over this same period, equating to average monthly expenses of $13,789.73.

### F. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

The only avoidance action known to the Debtor occurred shortly after the filing of this Chapter 11 case. Huntington National Bank ("HNB") was owed $2,400.00 in funds overdrawn against the Debtor's general operating account. HNB setoff $2,400.00 in funds the Debtor deposited into the account after the Debtor's Chapter 11 petition was filed. It is undetermined as to whether HNB conducted the setoff with knowledge of the bankruptcy filing. The Debtor likely had rights under Section 549 and 362 of the Bankruptcy Code to recover the funds. However, prior to filing litigation, HNB agreed to act as the "Debtor in Possession" account provider for the Debtor, which among other things, required the Debtor to have no overdrawn HNB accounts. In consideration for allowing for the new account relationship, which greatly benefitted the Debtor in a time of need, the Debtor has determined not litigate the avoidance action or other claims against HNB. Moreover, given the relatively small balance that was owed to HNB shortly prior to the Chapter 11 filing, the Debtor believes that pursuit of the avoidance action would have been disruptive to its future business dealings and cost-prohibitive.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H. Current and Historical Financial Conditions

The Debtor's only tangible assets consist of miscellaneous, used office equipment, including an office computer, copier, and supplies valued at $300.00 based upon evaluations of eBay and other equipment auction site listings, and $14,000.00 in accounts receivable due from FCBDD and ODODD. The Debtor's account receivables were paid to the Debtor after filing and are reflected in the Debtor's gross revenue calculations.

The Debtor has filed operating reports each month with the Court. They are on file and can be readily viewed electronically through PACER/CM.

Since filing this Chapter 11 and for the past eight (8) months, the Debtor's average monthly income of $15,600.00 (rounded) fits with the Debtor's recent financial history. The Debtor's average monthly expenses of $13,800.00 (rounded) for this same time period is also consistent with the Debtor's recent financial history.

The Debtor does not expect any major deviations (more than 10%) to either its revenues or expenses over the next 6 years.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

  **B.**  **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

  1.  **Administrative Expenses**

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Professional Fees, as approved by the Court. | $8,600.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan |
| Office of the U.S. Trustee Fees | $0.00 | Paid in full on the effective date of the Plan |
| TOTAL | **$8,600.00** | |

  **C.**  **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

  1.  **CLASS 1 - Priority Tax Claims - And OPT OUT Procedure**

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief as stated in 11 U.S.C. §1129(a)(9)(C).

In order for the Debtor to have a reasonable chance of performing the Plan, the Debtor's Plan does propose treatment that is <u>different</u> than the treatment generally required by 11 U.S.C. §1129(a)(9)(C). As such, the Debtor is providing an "opt out" procedure to obtain the agreement of the holders of the Class 1 priority tax claims. The procedure is as follows:

- Each priority tax claim holder will receive an Official Ballot form with a copy of this Disclosure Statement and Plan, and a copy of the Court's Order Conditionally Approving The Disclosure Statement.

- The Official Ballot will contain an "Opt Out" Check Box.

- If the "Opt Out" box is checked, the priority tax claim holder will be deemed to have opted out of the proposed, treatment and will instead receive the treatment required under 11 U.S.C. §1129(a)(9)(C).

- If the "Opt Out" box is not checked, or if no ballot form is cast, the priority tax claim holder will be deemed to have agreed to the different treatment proposed in the Plan.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment | |
|---|---|---|---|---|
| **Internal Revenue Service - IRS (Corp Inc., FUTA, FICA)** | $88,909.17 | December 2009-April 2015 | Monthly - on the twentieth day of each month beginning with first month following the later of the month of the Effective Date of the Plan, or the date of the entry of the final appealable order allowing the claim. | 72 Months x $1,235.00 per month |
| **Ohio Bureau of Worker's Compensation - OBWC** | $15,176.66 | January 2012-February 2015 | Monthly - on the twentieth day of each month beginning with first month following the later of the month of the Effective Date of the Plan, or the date of the entry of the final appealable order allowing the claim. | 60 Months with 3% interest per annum x $273.00 per month |
| **Ohio Department of Job & Family Services - ODJ&FS** | $22,883.57 | May 2012-June 2015 | Monthly - on the twentieth day of each month beginning with first month following the later of the month of the Effective Date of the Plan, or the date of the entry of the final appealable order allowing the claim. | 60 Months with 3% interest per annum x $412.00 per month |
| **Ohio Department of Taxation - OTAX** | $204.69 | 2013 | One lump sum payment on the fifteenth day of first month following the month of the Effective Date of the Plan | $204.69 |
| **City of Columbus, Department of Taxation - Corporate - CTAX CORP** | $4,473.16 | 2010, 2011 ,2012 | Monthly - on the twentieth day of each month beginning with first month following the later of the month of the Effective Date of the Plan, or the date of the entry of the final appealable order allowing the claim. | 60 Months x $74.56 per month |
| **City of Columbus, Department of Taxation - Income - CTAX INCOME** | $5,594.00 | 2013, 2014, 2015 | Monthly - on the twentieth day of each month beginning with first month following the later of the month of the Effective Date of the Plan, or the date of the entry of the final appealable order allowing the claim. | 60 Months x $93.23 per month |

2.     **CLASS 2 - Secured Claim (Internal Revenue Service)**

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment | |
|---|---|---|---|---|---|
| 2 | **Internal Revenue Service** | No | Impaired | Value $300.00 | One-time lump sum payment of $300.00 to be paid on the fifteenth day of the first month following the month of the Effective Date of the Plan |

3.  **CLASS 3 - General Unsecured Claims**

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. [Insert description of §1122(b) convenience class if applicable.]

The following chart identifies the Plan's proposed treatment of Class 3 which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment | |
|---|---|---|---|---|
| 3 | General Unsecured Class = (estimated) and (some disputed)<br><br>Huntington National Bank - $2,400.00<br>IRS - $74,445.17<br>OBWC - $1,836.53<br>ODJ&FS - $993.88<br>OTAX - $70.00 | Impaired | 5% Dividend<br>Est. $3,984.00 | Pro Rata Distribution of $1,000.00 Annually For 4 years on June 15th of each year beginning with the first year after the year of the Effective Date of the Plan |

4.  **CLASS 4 - Equity Security Holder(s)**

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Equity interest holders =<br><br>Ramona L. Hawkins, Sole Member of Debtor | Unimpaired | No change in ownership in or control over the Debtor |

D.  **Means of Implementing the Plan**

1.  *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Future Revenues of the Debtor, and when necessary, personal funds contributed by Ramona L. Hawkins.

2. *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| **Ramona L. Hawkins** | **Managing Member** | **Yes** | **Manager** | **$5,000.00 per month** |
|  |  |  |  |  |
|  |  |  |  |  |

E.  **Risk Factors**

The proposed Plan has the following risks:

The main risk factors associated with the Debtor's Plan is the need by the two (2) individuals for continued services under the FCBDD and ODODD, and the ability of Ramona L. Hawkins to continue providing such services. Ms. Hawkins classifies these risks as low. She is confident that the Debtor will remain certified and licensed to provide the residential services for its clients and that the clients will need continuous care.

F.  **Executory Contracts and Unexpired Leases**

There are no Executory Contracts or Unexpired Leases to assume or reject in this case.

G.  **Tax Consequences of Plan**

Please understand that the Plan and its tax consequences can be complex. The tax consequences of the Plan will depend on factual determinations with respect to each creditor. No ruling has been or will be requested from the Internal Revenue Service prior to the Effective Date regarding the tax consequences of the Plan.

**Because the tax consequences of the Plan are complex and may vary based upon individual circumstances, this Disclosure Statement renders no advice on the tax consequences on the implementation of the Plan to any particular creditor. Each creditor is urged to consult a tax advisor as to the consequences of the Plan under all applicable Federal, State and Local tax laws.**

However, the Debtor expects to receive a discharge of significant indebtedness as result of this Plan. Generally speaking, the Internal Revenue Code calls for inclusion of discharged or cancelled debt into gross income. However, the Internal Revenue Code also specifically excludes from gross income, all cancelled debt that occurs by operation of a discharge in a case filed under Title 11 of the United States Code. The Internal Revenue Code also states that to the extent the Debtor excludes from gross income, cancelled or discharged debt, the Debtor's future "tax attributes", including net operating business losses, must be reduced on a dollar for dollar basis until the discharged indebtedness exclusion has been satisfied. The Debtor has reviewed this provision, and understands the impact this Plan will have on his future income tax attributes.

IV.  **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote, Object or Opt Out

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that **Classes 2 and 3** are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that **Classes 1 and 4** are either unimpaired, or are not entitled to vote, and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

In this case, the Plan Proponent states that members of Class 1 (Priority Tax Claims) are entitled to "Opt Out" of the proposed, different treatment set forth in the Plan. *See, supra III C at page 6*.

1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case was* **JUNE 22, 2015**.

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.*

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.    Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

**C.    Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

In this case, the Debtor's only assets consist of $300.00 worth of used office equipment (e.g. computer, copier, supplies, desk and chairs). As of the effective date of the Plan, the Debtor will also likely have approximately $10,000.00 in cash. While the Debtor has determined not to pursue avoidance actions (see, II F. above), a Chapter 7 Trustee could potentially recover $2,400.00 in the action described. The Debtor takes no exemptions in the value of the property.

After costs of sale of 10%, a Chapter 7 Trustee could hypothetically recover $11,430.00 to use towards repayment of its debts to creditors. However, there would be no distribution to general unsecured creditors. First, the Internal Revenue Service may maintain that it holds a perfected tax lien against all of the Debtor's personal property, a levy against which make further distribution impossible. If true, a hypothetical Chapter 7 trustee would abandon the assets and no distribution to creditors would be made. Second, if the lien of the Internal Revenue Service is not present, the net funds available after a sale would first be used to pay administrative claims, and second to pay priority unsecured claims, before any funds would be paid to general unsecured, non-priority claims. As such, and based upon the amount of administrative claims (estimated at $6,600.00) and priority claims (estimated at over $127,000.00) there would $0.00 available for distribution to general unsecured claims in CLASS 3 in a hypothetical Chapter 7.

The Debtor's Plan proposes to pay CLASS 3 claims a 5% dividend which equates to $3,984.00 or twelve (12) times the value of the Debtor's non-exempt equity in property.

A Liquidation Analysis in further form is provided in the attached **Exhibit C**.

### D.     Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

#### 1.     *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

#### 2.     *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Debtor's average gross monthly income is $15,000.00 to $16,000.00 per month. The Debtor's expenses average approximately $13,700.00 per month inclusive of monthly compensation for the Debtor's sole member, Ramona Hawkins. The anticipated monthly debt service required under the Plan is $2,088.00 per month for the period following the anticipated Effective Date of the Plan. Estimating that Ms. Hawkin's monthly compensation will range between $4,000.00 and $5,000.00 per month in salary/draw, the Debtor believes that its Plan is Feasible.

The Debtor projects only a modest 3% annual increase in revenues during each year over the next 5 years. The Debtor further projects that expenses will increase in a like percentage. Thus, there should be no dramatic change in either income or expenses that will affect the Plan's feasibility.

A set of *pro forma* financial projections is provided in further form in **Exhibit D**.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.     EFFECT OF CONFIRMATION OF PLAN

### A.     Discharge of Debtor

Discharge.  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B.     Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

    **C.**    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

**VI.**    **OTHER PLAN PROVISIONS**

    None.

/s/ Ramona L. Hawkins
**Butterfliez Services, LLC**
[Signature of the Plan Proponent]

/s/ James E. Nobile
**James E. Nobile 0059705**
[Signature of the Attorney for the Plan Proponent]

# EXHIBITS

**EXHIBIT A:**

    **DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN**

**EXHIBIT B:**

    **OFFICIAL BALLOT**

**EXHIBIT C:**

    **LIQUIDATION ANALYSIS**

**EXHIBIT D:**

    *PRO FORMA* **FINANCIAL PROJECTIONS**